LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo (Pro Hac Vice Ca. Bar No. 144074)
dalekgalipo@yahoo.com
Eric Valenzuela (Pro Hac Vice Bar No. 284500)
evalenzuela@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

Peter Goldstein [SBN 6992]
PETER GOLDSTEIN LAW CORP
peter@petergoldsteinlaw.com
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 474-6400
Facsimile: (888) 400-8799

*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA (RENO)**

| | |
|---|---|
| JENNIFER ANDERSON, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>LYON COUNTY, et al.,<br><br>Defendants. | Case No. 3:20-cv-00435-LRH-WGC<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Declaration of Eric Valenzuela with attached exhibits *filed concurrently herewith*] |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The Court should deny Defendants' Motion for Summary Judgment with respect to the use of deadly force by Defendant Deputies Brett Willey and Timothy Wright, against the decedent, Robert Anderson Jr. ("Decedent"). Based on the undisputed facts, as shows in the body camera videos of Willey and Wright, the use of

deadly force was excessive and unreasonable. At a minimum, when the evidence is viewed in the light most favorable to Plaintiffs, including all reasonable inferences therefrom, there are triable issues of material fact regarding the excessive force and denial of medical care claims under the Fourth Amendment and Plaintiffs' claim for interference with familial relationship under the Fourteenth Amendment. With regards to Plaintiffs' state law claims, Defendants' Motion only argues that the Court to decline to exercise supplemental jurisdiction over said claims. See Mot. at 17:3-21.

As included in the Plaintiffs' Separate Statement of Facts and the declaration of police practice expert William Harmening, filed concurrently herewith, the use of deadly force was clearly excessive and unreasonable in this case for numerous reasons. See Exhibit M, Harmening Declaration, at 4:16-6:27. First, based on the undisputed facts alone, as shown in the videos which capture the incident, Decedent was unarmed, he had no weapons in his hands or on his person, his hands were visibly empty, he was not wearing a shirt so one could see there are no weapons in his waistband area, he never reached into the pockets of the shorts he was wearing. *Id*. Further, Decedent walked/ran down his hallway and straight into his kitchen, he never physically touched Willey or Wright, he never touched their guns or equipment, he never verbally threatened them, he never tried to punch, kick, strike or tackle the deputies, he never attempted to go hands-on with them, his hands were never clenched and he never took a fighting stance. *Id*. Moreover, Decedent was shot as he was traveling straight down the hallway and directly into his kitchen pass Willey and Wright, who were positioned directly to his right-hand side, and as he passed them and was moving away from them, including shots as he was going down to the ground and a shot to his back. *Id*. Decedent did not even look in the direction of Willey and Wright as he passed them, and instead was looking straight forwards towards his kitchen. *Id*. Importantly, Decedent never grabbed or reached towards the deputies' guns or equipment during the incident. *Id*.

At a minimum, based on the allegations made by Willey and Wright during their interviews to investigators and their depositions—even though they are refuted by the body cam videos — there are triable issues of material fact which precludes granting summary judgment. The disputed issues of material fact are discussed in detail in Plaintiffs' Statement of Facts, below.

Additionally, Willey and Wright are not entitled to qualified immunity for three reasons. First, Willey and Wright's use of deadly force falls within the obvious as being unreasonable, excessive and unlawful. Second, the U.S. Supreme Court has made it clear that qualified immunity is unavailable on summary judgment when there are disputed issues of material fact. Third, the law with respect to the use of deadly force against unarmed individuals was clearly established at the time of the incident. Accordingly, the Court should deny Defendants' Motion as to Plaintiffs' federal claims and should continue to exercise supplemental jurisdiction over the pendant state law claims.

## II. STATEMENT OF FACTS

Decedent was forty-three years old at the time of his death. See, Exhibit A, Autopsy Report, p. 3. Decedent was 5'8 and weight 185 lbs. *Id*. at 4. The information relating to the initial 911 call indicated that it was a male versus a female, it had become physical, there were no weapons involved, they were not requesting the medics, and that the male had been drinking ("MA VS FE PHYSICAL NEB[1] WEAPONS MA SUBJ IS HBD"). See, Exhibit B, CAD Call Info, p. 3; see also Exhibit G, Willey Int., p. 11; see also Exhibit K, Willey Depo., pg. 70:2-20, 71:24-72:4; Exhibit J, Wright Depo., 29:11-14.

Deputy Wright, who arrived on scene first, entered the home while his gun was still in his holster and announced that he was with the sheriff's department. See

[1] "NEB" is a typo and should say "NEG", which is short for negative.

Exhibit C, Wright Body Cam Video, at 0:02:53; Exhibit D, Willey Body Cam Video, at 0:01:00. Wright slowly entered through the doorway and into the home when Willey entered right behind him, Willey already had his gun drawn when he entered the home, and then Willey pushed Wright out of the way as he passed him. See Exhibit D, Willey Body Cam Video at 0:01:00-04. The deputies did not have a tactical plan before they entered and there were no discussions about who would be less-lethal and who would be lethal. See Exhibit K, Willey Depo., p. 25:15-17.

Willey was 5’8 and weighed approximately 205 lbs at the time of the incident and Wright was 5’10 and weighed approximately 195 lbs. See Exhibit K, Willey Depo., p. 8:17-25; see also Exhibit J, Wright Depo., p. 12:6-11. During the incident Willey had a taser and baton on his person and Wright had OC spray, a taser and a baton his person. See Exhibit K, Willey Depo., p. 16:7-10; see also Exhibit J, Wright Depo., p. 14:6-15:8.

Decedent then began to walk/run down the hallway and straight into his kitchen. Exhibit D, Willey Body Cam Video at 0:01:00-10. Decedent was shirtless, wearing shorts, and there are no weapons in his waistband, in his hands or on his person. *Id*; see also Exhibit G, Willey Int., p.13. Decedent’s hands are visibly empty, they are generally in front of him, they are not clinched and Decedent traveled directly towards his kitchen. Exhibit D, Willey Body Cam Video at 0:01:00-10; see also Exhibit E, Willey Body Cam Video in Slow Motion. Deputy Willey then issued commands for Decedent to “get down” and to “get on the ground right now” then immediately began to fire and Decedent went straight down to the ground. *Id*. at 00:01:00-10; Exhibit E, Willey Body Cam Video in Slow Motion. Willey and Wright, who were positioned on Decedent’s right-hand side, fired multiple shots at Decedent as he moved pass them and also as he passed and moved away from them, including shots as he was going down to the ground and a shot to his back. *Id*. at 00:01:00-10. After the shooting Willey ordered Decedent to get down on the ground three times, even though Decedent was already on the ground.

*Id*. Willey had a light attached to his gun which was turned on during the incident. See Exhibit G, Willey Interview, p. 13.

Neither Willey nor Wright have ever had prior contacts with Decedent. Exhibit G, Willey Int., p. 23; see also Exhibit H, Wright Int., p. 35.

As Decedent moved pass Willey and Wright and was being shot, Decedent's hands were visibly empty, he was not even looking in their direction, instead his head was looking straight forward towards the kitchen while the deputies were positioned directly to his right. Exhibit D, Willey Body Cam Video at 0:01:00-10; see also Exhibit E, Willey Body Cam Video in Slow Motion; Harmening Declaration at 7-9. Decedent never physically touched any of the deputies or their guns and equipment, nor did he attempt to do so, he never reached or grabbed towards any of the deputies, including for their guns or their equipment, he never tried to grab any weapon from the kitchen, and he never tried to punch, kick or strike any of the deputies. Exhibit D, Willey Body Cam Video at 0:01:00-10; see also Exhibit E, Willey Body Cam Video in Slow Motion. Further, Decedent never attempted to go hands-on with the deputies or fight with them, nor did he verbally threaten to physically harm any of the deputies. Exhibit D, Willey Body Cam Video at 0:01:00-10; see also Exhibit E, Willey Body Cam Video in Slow Motion; see also Exhibit K, Willey Depo., p. 31:20-22.

Neither Willey nor Wright ever gave a verbal warning to Decedent that deadly force would be used, prior to the shooting. Exhibit K, Willey Depo., p. 42:2-4; see also Exhibit J, Wright Depo., p. 24:1-5. Further, the light on Willey's gun, which was turned on during the incident, is blinding when its shined in a person's face. See Exhibit J, Wright Depo. at 30:8-22.

Willey never saw any weapons on Decedent or in the kitchen. See Exhibit G, Willey Int., p. 14, 26. Further, Wright indicated that he tried to back up and gain distance and that officers are trained that they should try to gain distance if they can. See Exhibit H, Wright Interview, pg. 37. Further, deputies are trained to tactically

retreat when feasible to create distance, and they are trained on gun retention techniques like if someone tries to grab their gun, they can holster it or pull it closer to their body (neither was done here). See Exhibit J, Wright Depo., p. 39:21-40:10. Moreover, Deputies are trained to give an individual an opportunity to comply with commands if feasible. *Id*. at 41:8-11

Willey is the team leader of the SWAT team for the Sheriff's Department. Exhibit G, Willey Int., p. 34.

According to the autopsy report, Decedent was shot five times. See Exhibit A, Autopsy Report, at 1-2. Gunshot wound "I" entered (Entrance "A") the posterior right axilla, which is the located on the back right side of the body, and had a trajectory of right to left, back to front and downward. *Id*. at 2, 5-6, see also Exhibit F, Photographs of Gunshot Wound I. Gunshot wound "II" was also to the right axilla, which is located on the right side of the body, and had a trajectory right to left, front to back and downward (Entrance "B"). Exhibit A, Autopsy report at 2, 6-7, Exhibit F, Photograph of Gunshot Wound II (Entrance "B"). Gunshot wound "III" was to the right chest and had a trajectory of front to back, right to left, and downward. Exhibit A, Autopsy report at 2, 7. Gunshot wound "IV" was a superficial or graze wound to the left chest and gunshot wound "V" was to the left forearm. *Id*. at 2, 7-8. Three of the bullets recovered from Decedent were matched to Willey's gun. See Exhibit I, Willey Second Int., p. 3.

It is highly disputed as to whether Decedent ever reached upward with his right hand towards the deputies' guns, as alleged by Willey and Wright. See Exhibit G, Willey Int., p. 14, 16, 33; see also Exhibit H, Wright Int., p. 30. Video of the incident clearly shows that Decedent never reached, including upward, for Willey or anyone else's gun. See Exhibit D, Willey Body Cam Video, at 0:01:00-10; Exhibit E, Willey Body Cam Video Slow Motion. Instead, Decedent is shot as he walked/ran pass the deputies and after he has passed them and is moving away from them towards the kitchen and Decedent did not even look in their direction (which

was to the right of Decedent) as he passed them, instead he looked straight forward towards the kitchen. See Exhibit D, Willey Body Cam Video, at 0:01:00-10; Exhibit E, Willey Body Cam Video Slow Motion; Exhibit M, Harmening Decl. at 9. Contrary to Willey's statements to investigators, Decedent never attempted to grab Willey's gun, or the gun of anyone else. See Exhibit G, Willey Int., p. 14. Instead, the video clearly shows that Decedent's hands are empty and that he never tried to grab any of the deputies' guns and was shot as he was traveling pass and also away from the deputies, including shots as he is going to the ground and a shot to the back. See Exhibit D, Willey Body Cam Video, at 0:01:00-10. See Exhibit E, Willey Body Cam Video Slow Motion. Further, Wright never saw Decedent reach for either Willey or Wright's gun. See Exhibit J, Wright Depo., p. 34:5-18.

It is disputed as to whether Decedent's hands were clinched in a fist during the incident as alleged by Willey and Wright. See Exhibit G, Willey Int., p. 16, 33; see also Exhibit H, Wright Int. at 13, 28-30. Wright even stated that Decedent was shot when his fist were clinched. See Exhibit H, Wright Int., p. 16. However, the video clearly shows that Decedent's hands were never clenched during the incident. See Exhibit D, Willey Body Cam Video, at 0:01:00-10; Exhibit E, Willey Body Cam Video Slow Motion.

Willey claims that the momentum of the Decedent changed (after he was shot) and then he continued straight forward and fell into the kitchen. See Exhibit G, Willey Int., p. 16. However, the video shows that Decedent was traveling directly down the hall and straight forward towards his kitchen from the very beginning, including before the shots were fired, and that he never changed direction, including before, during or after the shots. See Exhibit D, Willey Body Cam Video, at 0:01:00-10; Exhibit E, Willey Body Cam Video Slow Motion.

Defendants' "Statement of Facts" states that "[w]ithin seconds of the officers' entry into the home, Robert Anderson charged towards them down a confined hallway" and that "[a]s Robert Anderson ran towards the officers, Sgt. Willey and

Deputy Wright fired their weapons." Mot. at 6:20-7:1. However, Decedent was the only one in the hallway, and both Willey and Wright were outside the hallway near the corner entrance of the hallway, as Decedent traveled straight down the hallway and directly towards his kitchen and was shot. See Exhibit D, Willey Body Cam Video, at 0:01:00-10; see also Exhibit C, Wright Body Cam Video, at 0:02:52-58; Exhibit E, Willey Body Cam Video Slow Motion. Decedent was shot as he walked/ran pass Willey and Wright and also as he moved away from them and deeper into the kitchen, he was not even looking in their direction as he passed them, including shots as he was going to the ground, and to his right side (under right armpit area, Entrance "B") and his right-back area (Entrance "A"). See Exhibit D, Willey Body Cam Video, at 0:01:00-10; see also Exhibit A, Autopsy Report, p.2. There is also a horizontal graze or superficial wound to Decedent's left-chest area (Gunshot Wound "IV", Entrance "D") which further demonstrates that Decedent was shot as he was moving pass the officers and as they were positioned to his right side, and not in front of them. See Exhibit A, Autopsy Report, p.2; see also Exhibit L, Photograph of Gunshot Wound IV. Further, Wright testified that when he fired, Decedent was already in the kitchen (not in the hallway). See Exhibit J, Wright Depo., pg. 27:16-19.

Defendants' Statement of Facts also indicates that Decedent reached towards the deputies and that he attempted to "gain[] access to one or more of their weapons" at the time of the shooting. Mot. at 7:10-17. However, the video shows that Decedent's hands were visibly empty, and that he never reached towards the deputies, including towards their guns or equipment, and that he never attempted to gain access to any of their weapons at any point prior to or during the shooting. See Exhibit D, Willey Body Cam Video, at 0:01:00-10; Willey Body Cam Video Slow Motion. Instead, Decedent was shot while he moved pass the deputies and away from them, into his kitchen, with nothing in his hands, not even looking in their direction as he passed them, including shots as he was going down to the ground and

a shot to his back. See Exhibit E, Willey Body Cam Video Slow Motion at 0:01:00-10; see also Exhibit A, Autopsy Report, p. 2; Exhibit F, Photographs of Gunshot Wound I. Further, Wright never saw Decedent reach for either Willey or Wright's gun. See Exhibit J, Wright Depo., p. 34:5-18. Further, the Deputies never saw an object in Decedent's hands or on his person. See Exhibit K, Willey Depo., p. 37:7-16; see also Exhibit J, Wright Depo., p. 7:24-8:3, 11:4-7.

## III. LEGAL STANDARD

### A. Summary Judgment

On a motion for summary judgment, the Court views the evidence presented in the motion in the light most favorable to the plaintiff. Even where the basic facts are undisputed, summary judgment should be denied if reasonable minds could differ on the inferences to be drawn from those facts. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*, 841 F.2d 872, 875 (9th Cir. 1987). Summary judgment cannot be granted where a genuine dispute exists as to "material facts." Fed. R. Civ. P. 56(c). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). "A justifiable inference is not necessarily the most likely inference or the most persuasive inference. Rather, an inference as to another material fact may be drawn in favor of the nonmoving party . . . if it is rational or reasonable." *United Steelworks of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (internal citation and quotation marks omitted).

## IV. ANALYSIS

### A. Willey and Wrights Use of Deadly Force Was Unreasonable

An excessive force claim is adjudicated under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Among the specific facts a court must consider are "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Id*. (quoting *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). The three *Graham* factors are not exclusive, and the Ninth Circuit has identified several other factors that may be relevant, including whether the officer gave the suspect a warning before using force that could result in serious injury. See *Gonzalez v. City of Anaheim*, 747 F.3d 789, 793-94 (9th Cir. Mar. 31, 2014) *(en banc*) ("In general, [the Ninth Circuit] ha[s] recognized that an officer must give a warning before using deadly force whenever practicable" (internal quotation marks omitted)). Another recognized factor is "whether there were less intrusive means of force that might have been used." See *Glenn v. Washington Cnty*., 673 F.3d 864, 876 (9th Cir. 2011). With respect to this factor, while officers "need not avail themselves of the least intrusive means of responding to an exigent situation" and "need only act within that range of conduct" that is reasonable, the least intrusive means of force is relevant. *Glenn*, 673 F.3d at 876 (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)). "[P]olice are required to consider what other tactics if any were available, and if there were clear, reasonable and less intrusive alternatives to the force employed, that militates against finding the use of force reasonable." *Id*.

Courts recognize that "'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation,' and that these judgments are sometimes informed by errors in perception of the actual surrounding facts." *Glenn*, 673 F.3d at 871 (quoting *Graham*, 490 U.S. at 397). "Not all errors in perception or judgment, however, are reasonable" and while courts "do not judge the reasonableness of an officer's actions 'with the 20/20 vision of hindsight,' nor

does the Constitution forgive an officer's every mistake." *Id*. (quoting *Graham*, 490 U.S. at 396). The Court adopts "the perspective of a reasonable officer on the scene . . . in light of the facts and circumstances confronting [him]." *Id*. (quoting *Graham*, 490 U.S. at 396). The Ninth Circuit has held that "[b]ecause the reasonableness standard 'nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, . . . summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Torres v. City of Madera*, 648 F.3d 1119, 1125 (9th Cir. 2011) (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)).

As an initial matter, Defendants Motion is void of any analysis regarding the three *Graham* factors. See Generally Mot. at 9:24-13:9. Here, the severity of the crime at issue is domestic violence, and the initial call indicated that no weapons were involved and that the female did not require medical attention. The Ninth Circuit has interpreted the "severity of the crime" factor as relating to the initial crime prompting a response by law enforcement. See *Lowry v. City of San Diego*, 858 F.3d 1248, 1257-58 (9th Cir. 2017) (*en banc*), *cert. denied*, 138 S.Ct. 1283 (2018). The Ninth Circuit has analyzed the interplay between domestic abuse and the second *Graham* factor as follows:

> On the evening of the incident, Smith's wife called 911 to report that her husband "was hitting her and/or was physical with her," that he had grabbed her breast very hard. Although we are mindful of the seriousness and reprehensibility of domestic abuse, the circumstances are not such in this case as to warrant the conclusion that Smith was a particularly dangerous criminal or that his offense was especially egregious.

*Smith v. City of Hemet*, 394 F.3d 689, 702-03 (9th Cir. 2005) (*en banc*).

The "most important single element of the . . . factors" identified in *Graham* is whether the suspect poses an immediate threat to the safety of the police officers or others. *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (quoting *Chew v.*

*Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994)). "The key issue . . . is whether a reasonable jury would *necessarily* find that [the officer] perceived an immediate threat of death or serious physical injury at the time he shot [the decedent][.]" *Gonzalez v. City of Anaheim*, 747 F.3d 789, 794 (9th Cir. 2014) (*en banc*) (emphasis added). "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 1701 (1985). In considering "whether there was an immediate threat, a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to just such a concern." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (*en banc*) (internal quotation marks omitted); see *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). The court "may not simply accept what may be a self-serving account by the police officer[s]." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). Here, it is not simply enough for Willey and Wright to say that they thought Decedent was going to grab their gun. Especially since the video clearly shows that Decedent never attempted to grab any of the deputies' guns. In fact, Wright admitted during his deposition that he never saw Decedent try to grab either of their guns. See Exhibit J, Wright Depo., p. 34:5-18. Here, the deputies were not about to be shot by Decedent when they fired their weapons. At a minimum, whether objective factors supported Willey and Wright's subjective fear is a disputed issue of material and is not a question to be determined on summary judgment, especially when the evidence is construed in the light most favorable to Plaintiff.

When the evidence is viewed in the light most favorable to Plaintiffs, including all reasonable inferences therefrom, Decedent did not pose an immediate threat of death or serious bodily injury to Willey or Wright, or to anyone else, at the time of the shooting. See Exhibit M, Harmening Decl. at 9:25-10:2. Decedent, who did not have a shirt on, did not have any weapons on his person, his hands were visibly

empty, he never touched any of the deputies, their guns or their equipment, he never reached or grabbed towards the deputies, including towards their guns, he was not even looking in their direction as he moved passed them, Decedent was shot while he walked/ran pass them, including shots to the side of Decedent's body and to his back, and shots as he was going down to the ground. Further, Decedent traveld straight down the hall and directly into his kitchen and the deputies did not see any weapons in the kitchen. Moreover, Decedent never verbally threatened anyone. A jury could find that these facts do not support the notion that Decedent presented any immediate threat to the deputy defendants, despite Willey and Wright's self-serving statements to the contrary. In short, viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find that Decedent did not pose an immediate threat of death or serious bodily injury at the time of the shooting. Thus, the single most important *Graham* factor weighs heavily against finding that Willey or Wright's use of deadly force was reasonable.

Defendants' Motion argues that Decedent "ran at the officers in a confined space and the officers were justifiably afraid of the serious consequences (the threat of death or serious bodily injury) should Robert Anderson have reached and/or overtaken one of both of them and gained access to their weapons." See Mot. at 12:22-26. However, it is undisputed that Decedent never reached for any of the deputies' guns and he never gained or attempted to gain access to their weapons and a reasonable jury could find that Decedent did not pose an immediate threat of death or serious bodily injury because he was unarmed, with his hands visibly empty and was not even looking in their direction as he went passed them and was shot, including shots to his back and as he went down to the ground. At a minimum, there is a disputed issue of material fact as to whether Decedent posed an immediate threat of death or serious bodily injury to Willey and Wright at the time of the shooting.

Here, to the extent Willey and Wright believed that Decedent was reaching for or going to grab their gun, they clearly made a mistake. A rational trier of fact may find that such a mistake was not reasonable and does not justify their use of deadly force. See *Glenn*, 673 F.3d at 871 (holding that not all errors in perception or judgment are reasonable and that the Constitution does not forgive an officer's every mistake). An officer's unreasonable factual mistake can lead to a Fourth Amendment violation. See *Torres v. City of Madera*, 648 F.3d 1119, 1127 (9th Cir. 2011) (reversing summary judgment because officer's mistake of fact was unreasonable). Applying the *Graham* factors to determine the reasonableness of that mistake weighs heavily in Plaintiffs' favor. At a minimum, when the evidence is viewed in Plaintiffs' favor, including all reasonable inferences therefrom, whether such an error in perception/mistake was reasonable or not is a disputed issue of material fact which must be resolved by a jury.

Here, Decedent was shot when he was in his own home and he was never told that he was under arrest. Further, Willey told Decedent to get down on the ground, but then immediately shot him, not providing time to comply with the command, and then he quickly went down to the ground, and after he was already on the ground shot, Willey continued to command Decedent to get down on the ground. Moreover, it would have been unreasonable to Willey and Wright to shoot Decedent because of the pace he walked/ran down the hall and into the kitchen. Therefore, there is a disputed issue of material fact as to whether Decedent was resisting arrest. Further, Decedent went from his hallway into his kitchen but he never attempted to flee the scene. In sum, an analysis of the *Graham* factors, which Defendants' failed to include in their Motion, supports that Willey and Wright's use of deadly force was unreasonable and that they are not entitled to a finding that their use of force was reasonable as a matter of law.

Willey and Wright also failed to give a verbal warning that deadly force would be used against Decedent before they fired, despite being feasible to do so. A

reasonable jury could find that it was feasible to provide a warning before shooting and that failing to do so further supports a finding that their use of deadly force was unreasonable. See *Gonzalez,* 747 F.3d at 793-94 ("In general, [the Ninth Circuit] ha[s] recognized that an officer must give a warning before using deadly force whenever practicable"). Further, Willey and Wright had less then lethal alternatives that were available such as tasers, batons and OC spray, that they should have used before resorting to the use of deadly force. Especially since Decedent was unarmed, his hands were visibly empty, he had no shirt on and he never attempted to reach or grab for the deputies' guns and he never attempted to punch, kick, strike or go hands-on with them. Based on the availability of less than lethal alternatives that Willey and Wright failed to use before shooting, the jury may find that this factor further supports that the use of deadly force was unreasonable. See *Glenn*, 673 F.3d at 876 (police are required to consider what other tactics if any were available, and if there were clear, reasonable and less intrusive alternatives to the force employed, that militates against finding the use of force reasonable). Here, there were clear, reasonable, and less intrusive alternatives to shooting Decedent multiple times.

Defendants' Motion should also be denied because there are disputed issues of material fact. Fed. R. Civ. P. 56(c); see also *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1116 (9th Cir. 2016) (summary judgment inappropriate where "[t]he version of events offered by [the officers] to the district court [wa]s materially contradicted by evidence in the record"). The non-moving party need only raise an issue of material fact that requires resolution by the finder of fact to defeat summary judgment. . . As discussed in Plaintiffs' Separate Statement of Facts, there are numerous disputed issues of material fact. See section II, *supra,* at 6:14-8:20. Viewing the evidence in the light most favorable to Plaintiffs, Decedent never reached for any of the deputies' guns and he never attempted to reach, take or gain access to any of their guns which casts doubt on the deputy defendants' accounts that Decedent was grabbing for their guns and was trying gain access to take their

guns away from them such that a "jury could . . . reasonably conclude that the officers lied." See *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079-80 (9th Cir. 2014). Even Wright testified that he never saw Decedent reach or grab for any of their guns. See Exhibit J, Wright Depo., p. 34:5-18; see, e.g., *C.V. by and through Villegas v. City of Anaheim*, 823 F.3d 1252, 1256 (9th Cir. 2016) (finding that district court erred in holding that officer's use of deadly force was justified where "the officers' sworn declarations and testimony differ[ed] on key points[;]" one officer testified that "he observed [the suspect] make 'a quick movement' to grab the barrel of the rifle which had previously been resting against the wall" but other officers "did not see [the suspect] grab the gun from against the wall"). There is a material issue of fact regarding whether Willey and Wright unreasonably used deadly force given that Decedent did not, in fact, pose a significant threat of death or serious physical injury. This Court should not say, as a matter of law, that Willey and Wright's use of deadly force was objectively reasonable. A jury must resolve this factual dispute and determine whether the lethal force used by Willey and Wright was excessive. See *Santos v. Gates*, 287 F.3d. 846, 853 (9th Cir. 2002). Defendants' motion for summary judgment with regard to Plaintiffs' excessive force claim should therefore be denied.

**B. Willey and Wrights Are Not Entitled to Qualified Immunity**

Willey and Wright are not entitled to qualified immunity because their use of deadly force against Decedent falls within the obvious as being unreasonable and excessive, there are also disputed issues of material fact which must be resolved by a jury, and when the evidence is viewed in the light most favorable to Plaintiffs, including all reasonable inferences therefrom, Willey and Wrights use of deadly force was unreasonable and violated clearly established law. To determine whether Willey and Wright violated clearly established law, courts look to "cases relevant to the situation [Willey and Wright] confronted," *Brosseau v. Haugen*, 543 U.S. 194, (2004) (quotation marks omitted), mindful that there need not be a case "directly on

point." *Gravelet–Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). The court is "particularly mindful of this principle in the Fourth Amendment context, where the constitutional standard – reasonableness – is inevitably a fact-intensive inquiry. After all, if qualified immunity provided a shield in all novel factual circumstances, officials would rarely, if ever, be held accountable for their reasonable violations of the Fourth Amendment." *Bonivert v. City of Clarkson*, 883 F.3d 865, 872-73 (9th Cir. 2018) (internal quotation marks and brackets omitted).

"An officer's use of deadly force is reasonable only if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994) (quoting *Garner*, 471 U.S. at 3). "Case law has clearly established that an officer may not use deadly force to apprehend a suspect where the suspect poses no immediate threat to the officer or others." *Garner*, 471 U.S. at 11).

In some circumstances, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *United States v. Lanier*, 520 U.S. 259, 271 (internal quotation marks omitted); see *District of Columbia* v. *Wesby*, 138 S.Ct. 577, 581 (2018) ("[T]here can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances.") (internal quotation marks and citations omitted). In this case, it is obvious that Wright and Willey's use of deadly force against Decedent was unwarranted by the circumstances. For example, Decedent's hands were visibly empty, he was shirtless and there were no weapons on his person, he never reached or grabbed for any of the deputies or their guns and equipment, and he never physically touched any of the deputies, including their guns and equipment. Decedent never tried to punch, kick, strike, tackle or go hands-on with the deputies. Further, Decedent was shot as he

traveled pass the deputies and as he passed them and was moving away from them, including shots to the back and as he was going down to the ground. Decedent did not even look in the direction of the deputies as he passed them and instead looked straight forward towards the kitchen. Moreover, Willey and Wright did not give any verbal warnings to Decedent before they fired and Decedent never verbally threatened them.

Under these circumstances, viewing the facts in the light most favorable to Plaintiffs, no reasonable officer could believe that it was lawful to, without any warning, shoot and kill an unarmed person who posed no immediate threat to any law enforcement officer or anyone else. In other words, this case is the rare but "obvious one where *Graham* and *Garner* alone offer a basis for decision." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004); see, e.g., *Adams v. Speers*, 473 F.3d 989, 994 (9th Cir. 2007) (affirming denial of qualified immunity where, "accepting [plaintiff's] facts as true, this case falls within the obvious"); *Estate of Kosakoff ex rel. Kosakoff v. City of San Diego*, 460 F.Appx. 652, 654 (9th Cir. 2011) (affirming denial of qualified immunity on excessive force claim because, if jury were to find plaintiff "posed no significant threat[,]" fact that deadly force employed by officers was unconstitutionally excessive would be "obvious as a matter of law") (internal quotation marks omitted); see also *Hope v. Pelzer*, 536 U.S. 730, 738, (2002) ("As the facts are alleged by [plaintiff], the [Fourth] Amendment violation is obvious.").

Willey and Wright are also not entitled to qualified immunity because there are disputed issues of material facts. As included in Plaintiffs' Statement of Facts, (see *supra*, Section II at 6:14-8:20), there are numerous disputed issues of material fact. "Case law has clearly established that an officer may not use deadly force to apprehend a suspect where the suspect poses no immediate threat to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). Here, based on Plaintiffs' version of the facts, it would have been clear to a reasonable officer that shooting Decedent was unlawful. Plaintiffs have thus raised genuine disputes of material fact

that should preclude the Court from granting summary judgment to Willey and Wright on the ground of qualified immunity. See *Lolli v. Cnty. of Orange*, 351 F.3d 410, 421-22 (9th Cir. 2003) (declining to grant summary judgment to officers based upon qualified immunity because if "[the plaintiff's] version of the facts ultimately prevails, there is a reasonable likelihood that the officers would not be entitled to qualified immunity"); see also *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1117 (9th Cir. 2016) (holding that summary judgment was inappropriate where there was disputed evidence about whether the officers were telling the truth about when, why, and how the plaintiff was shot).

Since there are disputed issues of material fact as to whether Wright and Willey made an objectively reasonable mistake in using the force that they did, the existence of a constitutional violation cannot be determined on summary judgment. See *Santos*, 287 F.3d at 855 n.12 (finding it premature to decide the qualified immunity issue "because whether the officers may be said to have made a 'reasonable mistake' of fact or law may depend on the jury's resolution of disputed facts and the inferences it draws therefrom"). The question of whether the deputy defendants used excessive force in violation of Decedent's Fourth Amendment rights must be left to the jury. See, e.g., *Longoria v. Pinal Cty*., 873 F.3d 699, 707 (9th Cir. 2017), *cert. denied sub nom, Rankin v. Longoria*, 138 S.Ct. 2601 (2018) ("The record reveals many other facts in dispute that are material to the determination of whether a reasonable officer would have perceived that [plaintiff] posed any immediate threat."); *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) (holding that "[b]ecause historical facts material to the qualified immunity determination are in dispute," defendants were not entitled to summary judgment on qualified immunity grounds) (internal quotation marks omitted).

Even if this were not an "obvious" case—which Plaintiffs believe it is—, long-established precedent provided Willey and Wright with clear notice that their conduct was unlawful. For example, a body of case law makes clear that the use of

lethal force against unarmed individuals who pose little or no risk to officer safety violates an individual's Fourth Amendment right to be free of excessive force. *See Zion v. Cnty. of Orange*, 874 F.3d. 1072, 1076 (9th Cir. 2017) ("If a jury determines that Zion no longer posed an immediate threat, any deadly force [the officer] used after that time violated long-settled Fourth Amendment law. [The Ninth Circuit has] cases holding that the use of deadly force against a non-threatening suspect is unreasonable."). In *Ting v. United States*, 927 F.2d 1504 (9th Cir. 1991), the Ninth Circuit held that, even though the suspect "pulled his arm free from [the agent's] grasp, stood up, and lunged" away, "[a] jury could reasonably conclude that it would not be reasonable for an officer to believe the use of deadly force was lawful under [the plaintiff's] version of the shooting, i.e., an unarmed and injured felon lying or kneeling on the floor surrounded by five heavily armed agents." *Id*. at 1508 & 1511. The *Ting* court concluded that a rational jury could find the officer's use of deadly force against the plaintiff unjustified, noting that, although the officer had testified that the plaintiff, who stands 6'5" tall, "was shot while upright from a distance of four to five feet," the plaintiff "present[ed] evidence from which a jury could reasonably conclude that he was shot at close range while in a prone position or on his hands and knees." *Id*. at 1510; see, e.g., *Hopkins v. Andaya*, 958 F.2d 881, 886-87 (9th Cir. 1992), *cert. denied*, 513 U.S. 1148 (1995), overruled on other grounds as stated in *Federman v. County of Kern*, 61 Fed.App'x 438, 440 (9th Cir. 2003) (finding the officer's second use of lethal force excessive and unreasonable where the suspect was wounded and unarmed).

The Court must accept Plaintiffs' version of the facts to determine whether the officer is entitled to qualified immunity on summary judgment. See *Winterrowd v. Nelson*, 480 F.3d 1181, 1184 (9th Cir. 2007); see also *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (holding that where there exist genuine issues of material fact regarding the constitutional violation in question, "summary judgment is appropriate only if defendants are entitled to qualified immunity on the

facts as alleged by the nonmoving party".). When the evidence is viewed in the light most favorable to Plaintiffs, including all reasonable inferences therefrom, the information in the initial call indicated that no weapons were involved, when Willey and Wright first saw Decedent his hands were visibly empty and he had no shirt on and there were no weapons on his person or near him. Further, Decedent never touched any of the deputies or their guns and equipment, nor did he ever reach or grabbed towards the deputies or their guns and equipment. Moreover, Decedent was not even looking in the deputies direction as he traveled passed them, he was shot while he passed Willey and Wright (who were positioned on his right-hand side), including shots to the side of Decedent's body and to his back, and shots as he was going down to the ground. Further, Decedent moved straight down the hall and directly into his kitchen, the deputies did not see any weapons in the kitchen and he never verbally threatened anyone. Based on the video alone, a reasonable jury could infer that Decedent was traveling directly into his kitchen and that he never tried to reach, grab or gain access to any of the deputies' guns and that it would be unreasonable for the deputies to believe that Decedent was trying or was going to try to do any of those things. Under Plaintiffs' version of the facts, Willey and Wright's use of deadly force was unreasonable and as of the date of the shooting (September 2, 2019) case law clearly established, and the defendant deputies were on sufficient notice, that their use of deadly force was unlawful.

The Ninth Circuit's decision in *A.K.H. v. Tustin,* 837 F.3d 1005 (9th Cir. 2016) is instructive. Here, just like in *A.K.H.*, the dispatcher initially reported a domestic violence incident were the male had become physical with the female and hit her, the reporting party was not requesting the medics, and there were no weapons involved. *Id*. at 1008. In *A.K.H.*, just like in his case, the officer gave commands for the individual to "get down", the suspect did not comply, the officer did not give any warning that he would shoot, and both officers admitted that they never saw anything in either of the individual's hands. *Id*. at 1009. The *A.K.H*. case

is also similar to this case because the officer also claimed that the individual charged at him or shortened the distance or closed the distance very quickly, the officer's commands and shots were separated by less than a second, the total elapsed time from when the officer first encountered the decedent until the officer shot him was less than a minute, and it was undisputed that the individual was unarmed. *Id*.

The Ninth Circuit held in *A.K.H*. that the individual did not "pose[ ] an immediate threat to the safety of the officers or others" because the domestic altercation was over, the individual posed no current threat to the safety of the female or the officers because he had no weapon. *Id*. 1011-12, quoting *Graham*, 490 U.S. at 396. The court in *A.K.H*. also held that "[i]t is also clear in retrospect that [decedent] posed no threat to the safety of the officers, as he in fact had no weapon; but the relevant question for purposes of qualified immunity is whether [the officer] could reasonably have believed that [decedent] posed such a threat" and "viewing the evidence in the light most favorable to Plaintiffs, [the court] conclude[d] that he could not." *Id*. at 1011-12. "[T]his means [the officer] had no articulable basis to think [the suspect] was armed." *Id*. at 1013, citing *Garner*, 471 U.S. at 20. In *A.K.H*., the Ninth Circuit ruled that "[i]t has long been clear that '[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead.'" *Id*. at 1013, citing *Garner*, 471 U.S. at 11, 105 S.Ct. 1694. In "[v]iewing the evidence in the light most favorable to the plaintiffs, that is precisely what [Willey and Wright] did here" and therefore they are not entitled to qualified immunity. *Id*. at 1013-14.

Willey and Wright were also trained to pull their guns close to their chest, and to back up and try to gain more distance if they believe someone is going to take their guns, and also to give individuals time to comply with commands, which they failed to follow. See Exhibit H, Wright Interview, pg. 37; Exhibit J, Wright Depo., p. 39:21-40:10, 41:8-11; Exhibit J, Willey Depo., p. 51:1952:6. An objectively reasonable officer follows basic police officer training materials and guidelines and is

on notice of the rights protected by those guidelines. *See Drummond v. City of Anaheim*, 343 F.3d. 1052, 1062 (9th Cir. 2003) ("training materials are relevant not only to whether the force employed in this case was objectively unreasonable . . . but also to whether reasonable officers would have been on *notice* that the force employed was objectively unreasonable.").

Qualified immunity for the use of deadly force is routinely denied in cases more severe than this, where the suspects are armed with guns and have committed violent crimes. *See Curnow v. Ridgecrest Police,* 952 F.2d 321, 324–25 (9th Cir.1991) (suspect possessed a gun but was not pointing it at the officers and not facing the officers when they shot); *Ting*, 927 F.2d at 1508–11 (gun); George v. Morris, 736 F.3d 829, 832 (9th Cir. 2013) (gun); *Harris*, 126 F.3d at 1203 (violent crime); *Hopkins*, 958 F.2d at 887 (violent assault of officer). Accordingly, considering the totality of the circumstances, and viewing the facts in the light most favorable to Plaintiffs, the Court should be persuaded that there is more than sufficient clearly established law that prohibits the deputy defendants' actions in this case. Thus, defendants are not entitled to qualified immunity on Plaintiffs' excessive force claim.

To argue that Willey and Wright are entitled to qualified immunity, Defendants cite an out-of-circuit case that is not binding on this Court and that is distinguishable. (See Mot. at 12:26-13:5). Defendants cite *Carswell v. Borough of Homestead*, 381 F.3d 235, 243 (3rd Cir. 2004) (*cert. denied*, 546 U.S. 899 (2005), for the proposition that "[a] reasonable officer would not be expected to take the risk of being assaulted by a fleeing man who was so close that he could grapple with him and seize the gun". See Mot. at 12:26-13:5. However, in *Carswell*, the Third Circuit found that there was evidence that the decedent had threatened plaintiff's brother with physical violence involving a gun (pistol-whip), the shooting officer did not know that the decedent was unarmed, and based on the information he previously had involving a weapon, the officer believed the decedent may have had

a weapon on his person. *Id*. at 238-39. Further, in *Carswell*, the officer was by himself in an alley, he did not have less lethal options such as a baton or pepper spray and the officer said that if he had had non-lethal weapons in his possession, he would not have pulled his gun from the holster. *Id*. In *Carswell*, the court relied heavily on the fact that although "it was determined that the [decedent] was unarmed, [the officer] denied that he knew that at the time and there was no evidence to the contrary." *Id*. at 243. In this case, in contrast, the information by dispatch in the initial call indicated that there were no weapons involved, there were two officers confronting the unarmed Decedent instead of one, Willey and Wright could see that Decedent was unarmed because his hands were visibly empty and Decedent did not have a shirt on which further showed there were no weapons on his person, and the officers never saw any weapon anywhere near him, including in the kitchen. Further, Willey and Wright had less than lethal options on them which they never tried to use prior to firing. Accordingly, Defendants' reliance on this out-of-circuit case is misplaced.

**C. Willey and Wrights Did Not Provide Timely Medical Assistance**

Willey and Wright did not provide timely medical assistance to Decedent after they shot him. Approximately six (6) minutes passed from when they shot Decedent until Willey finally tried to provide some medical assistance. Exhibit D, Willey Body Cam Video, at 0:01:06-0:07:30. The ambulance eventually arrived on scene approximately eight minutes after the shooting. *Id*. at 0:01:06-0:09:20. Even when Willey did provide medical assistance, all he did was place some gauze pads on top of Decedent's chest and did not even attempt to apply pressure to any of his wounds. *Id*. Decedent, who was shirtless when he was shot, immediately and noticeably began to bleed profusely from his body and Willey and Wright waited over six (6) minutes before ever even attempting to provide medical care, while Decedent lay on the floor of his kitchen bleeding to death. A reasonable jury could find that Willey and Wright

failed to provide timely medical assistance to Decedent after shooting him multiple times, in violation of his Fourth Amendment rights.

**D. Willey and Wrights Violated Plaintiffs' Fourteenth Amendment Rights**

Defendants next move for summary judgment on Plaintiffs' Fourteenth Amendment substantive due process claim for deprivation of their liberty interest in Decedent's companionship. To make out a substantive due process claim, Plaintiffs must show that Willey and Wright's conduct "shocks the conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). One of two standards applies, depending on whether the situation "evolve[d] in a time frame that permit[ted] the officer to deliberate before acting" on the one hand, or "escalate[d] so quickly that the officer [had to] make a snap judgment" on the other. *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). In the former situation, a "deliberate indifference" standard applies, meaning "something more than negligence but less than intentional conduct, such as recklessness or gross negligence." *Lewis*, 523 U.S. at 849 (internal quotation marks omitted). And in the latter situation, "where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may be found to shock the conscience only if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Hayes v. Cty. of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013).

Here, there is a triable issue under either standard, because Willey and Wright shot Decedent even though he was unarmed with no shirt on, his hands were visibly empty, he never touched or grabbed any of the deputies' guns, nor did he attempt to do so, and he was shot as he traveled passed them, including a shot to the back and shots as he was going down to the ground. Decedent did not even look in the direction of Willey and Wright as he moved passed them and was shot. Further, Willey and Wright shot Decedent without ever providing a verbal warning that deadly force would be used prior to firing. This evidence raises a genuine dispute about Willey and

Wright's motive in killing Decedent, or at least creates a triable issue of material fact, and a reasonable jury could find under either the "deliberate indifference" or "purpose to harm" standard that their conduct "shocks the conscience." Accordingly, Defendants' Motion on Plaintiffs' Fourteenth Amendment claim should be denied.

Defendants' Motion also argues that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. See Mot. at 17:3-21. However, the Court should deny Defendants' Motion as to Plaintiffs' federal claims and should continue to exercise supplemental jurisdiction over the supplemental state law claims.

## V. CONCLUSION

For the reasons above stated, the Court should deny Defendants' Motion for in its entirety.

Respectfully submitted,

DATED: August 10, 2021 THE LAW OFFICES OF DALE K. GALIPO

By: /s/ Eric Valenzuela
Eric Valenzuela
Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of THE LAW OFFICES OF DALE K. GALIPO and that on this date I caused the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** to be served on all parties to this action by:

_____placing an original or true copy thereof in a sealed, postage prepaid, envelope in the United States mail at Reno, Nevada.

__✓__United States District Court, District of Nevada CM/ ECF (Electronic Case Filing)

_____ personal delivery

____ facsimile (fax)

_____ Federal Express/UPS or other overnight delivery

fully addressed as follows:

**Katherine F. Parks, Esq. -**
**Thorndal Armstrong Delk Balkenbush & Eisinger**
**6590 S. McCarran Blvd., Suite B**
**Reno, Nevada 89509**

DATED this 10th day of August 10, 2021.

***/ s / Stacy Berger***

An employee of THE LAW OFFICES OF DALE K. GALIPO