UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FREDRICK WAID and JENNIFER ANDERSON, as the appointed co-special administrators of the estate of ROBERT ANDERSON JR.; JENNIFER ANDERSON; JENNIFER ANDERSON, as parent and guardian of M.R.A., a minor; JENNIFER ANDERSON, as parent and guardian of S.G.A., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>LYON COUNTY; TIMOTHY WRIGHT; BRETT WILLEY; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00435-LRH-WGC<br><br>ORDER |

Before the Court is the motion for summary judgment filed by Defendants Lyon County, Timothy Wright, Brett Willey, and Does 1-1 (collectively "Defendants") (ECF No. 36). Plaintiffs Fredrick Waid and Jennifer Anderson, as the appointed co-special administrators of the estate of Robert Anderson Jr.; Jennifer Anderson; Jennifer Anderson, as parent and guardian of M.R.A., a minor; and Jennifer Anderson, as parent and guardian of S.G.A., a minor (collectively "Plaintiffs") filed a response (ECF No. 38) to which Defendants replied (ECF No. 42). For the reasons articulated below, the Court grants Defendants' motion for summary judgment.

**I.     BACKGROUND**

In considering Defendants' motion for summary judgment, the Court will view the facts in the light most favorable to the non-moving party. The factual details of this case are undisputed because body cam videos of the incident have been submitted to the Court. ECF No. 39. Therefore,

1

the Court assumes, without finding, the truth of those facts alleged by Plaintiffs which are supported by the record.

On September 2, 2019, an emergency call indicated that a domestic violence situation was occurring between a male who had been drinking (Robert Anderson, "Anderson") and a female (Jennifer Anderson, "Mrs. Anderson") in their home. Emergency medical care was not requested, and it was reported that no weapons were involved. Officers Timothy Wright ("Wright") and Brett Willey ("Willey") responded to the call.

Wright arrived at the scene first. Upon his arrival, the Andersons' two minor children exited the home and spoke to Wright. They reported that their father was throwing their mother around and that emergency medical care was needed. Wright immediately called for expedited emergency care. Willey arrived at the scene less than a minute later. After determining that they needed to enter the house, Wright and Willey did so through a door in the kitchen and announced who they were. Anderson heard their announcement and responded "F*** you punks." The officers proceeded toward the entrance of the hallway that was at the end of the kitchen's left-hand side wall. As Willey reached the end of the cabinets on that wall, he looked around them and down the hallway to see Anderson who was clothed in shorts but no shirt. Anderson had just rounded the corner at the end of the hallway and was facing the officers.[1]

Upon seeing him, the officers immediately yelled "Get down" followed by "Get on the ground." Either right before or at the same time as the officer yelled "Get on the ground," Anderson began quickly advancing toward the officers.[2] Within two seconds, he covered the ground from where he rounded the corner to the threshold that separates the hallway from the kitchen. Willey fired the first shot as Anderson reached the threshold.[3] As he reached the threshold or immediately after, Willey stepped backward to create distance from him. By doing so, Willey could no longer see down the hallway. Within the next second of the video, a viewer can hear additional shots being fired but the precise location of where the decedent was when each shot was fired is unclear.

---

[1] At this point, Anderson was about the length of his hallway runner away from the officers.
[2] Plaintiffs claim that the decedent "began to walk/run down the hallway" toward the officers. ECF No. 38 at 4. However, when the video is viewed in the light most favorable to the Plaintiffs, the decedent was quickly advancing toward Wright and Willey, not walking.
[3] At this point, Anderson was about a kitchen cabinet depth away from Willey.

However, the video does show that he was in the kitchen advancing straight toward the sink whereas the officers were to his right-hand side.

After being shot, Anderson fell to the ground as Wright and Willey yelled out "Stay down." Willey reported the shots and sought medical care. After removing Mrs. Anderson and checking the house for additional people, Willey retrieved his medical bag and put gauze on Anderson's wounds. Anderson succumbed to his injuries.

## II.   LEGAL STANDARD

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence and all reasonably drawn inferences must be read in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001). To successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record which show a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).

## III.   DISCUSSION

In their second amended complaint, Plaintiffs alleged three separate claims under 42 U.S.C. § 1983 ("Section 1983"): (1) Defendants violated the Fourth Amendment through use of excessive force; (2) Defendants violated the Fourth Amendment through denial of medical care; and (3) Defendants violated the Fourteenth Amendment through unwarranted state interference with Plaintiffs' familial relationship with the decedent. ECF No. 24 at 6–9. Plaintiffs also alleged three state law claims. ECF No. 24 at 11–15. Defendants now seek summary judgment for the Section 1983 claims on both substantive and qualified immunity grounds and request that the Court decline to exercise supplemental jurisdiction over the state law claims.

Section 1983 provides a private right of action when a person's rights protected by the Constitution or federal statutes are violated by someone acting under the color of state law. It is well established, however, that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). At the summary judgment stage, "an officer may be denied qualified immunity in a Section 1983 action only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood his conduct to be unlawful in that situation." *Longoria v. Pinal Cnty.*, 873 F.3d 699, 704 (9th Cir. 2017) (quotation omitted).

For the reasons articulated below, the Court finds that Wright and Willey are entitled to qualified immunity on Plaintiffs' Section 1983 claims and declines to exercise supplemental jurisdiction over the state law claims.

**A. Excessive Force Claim**

Plaintiffs first claim that Wright and Willey violated the Fourth Amendment by using excessive force. Specifically, they claim that Wright and Willey's use of deadly force was excessive because Anderson was not an immediate threat to their safety or others, less intrusive methods of force were available, and they failed to provide a warning before using deadly force. ECF No. 38 at 10–16. In addition, they argue that issues of material fact preclude summary judgment. *Id.* Wright and Willey argue that their use of deadly force was objectively reasonable, and that they are entitled to qualified immunity because the law was not clearly established. ECF No. 36 at 9–13. The Court finds that Wright and Willey are entitled to qualified immunity and summary judgment on the excessive force claim.

  a. <u>Wright and Willey's conduct did not constitute excessive force.</u>

The Court first turns to the question of whether Wright and Willey's conduct constituted a violation of the Constitution. An excessive force claim is analyzed under the Fourth Amendment objective reasonableness standard, *Graham v. Connor*, 490 U.S. 386, 388 (1989), which requires

the Court to determine whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation," *Hooper v. Cnty. of San Diego*, 629 F.3d 1127, 1133 (9th Cir. 2011) (quotation omitted). Specifically, the test requires the Court to assess the gravity of the intrusion by evaluating the type and amount of force inflicted and then to balance the extent of the intrusion against the government's interests. *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003).

In this case, the gravity of force inflicted was severe because Wright and Willey used deadly force by firing their firearms at Anderson. The Supreme Court has explained that the use of deadly force is reasonable "where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Brosseau v. Haugen*, 543 U.S. 194, 197–98 (2004) (quotation omitted). Further, "if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm," an officer may use deadly force "if necessary to prevent escape, and if, where feasible, some warning has been given." *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985). But it is unreasonable for an officer to "seize an unarmed, nondangerous suspect by shooting him dead" when he is fleeing the scene. *Id.* at 11.

To determine the strength of Wright and Willey's interest in using deadly force, the Court must examine several factors including but not limited to (1) the severity of the crime at issue; (2) whether the individual posed an immediate threat to the safety of the officers or others; and (3) whether the individual actively resisted arrest. *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (en banc) (citing *Graham*, 490 U.S. at 396).

The first factor to consider is the severity of the crime at issue. Domestic violence is a serious and reprehensible crime that results in more officers being injured on calls than on any other sort. *Marquez v. City of Phx.*, 693 F.3d 1167, 1175 (9th Cir. 2012). "As a result, when officers respond to a domestic abuse call, they understand that violence may be lurking and explode with little warning." *Id.* (quotation omitted). However, the use of force may be more difficult to justify when "the domestic dispute is seemingly over by the time the officers begin their investigation." *Mattos v. Agarono*, 661 F.3d 433, 450 (9th Cir. 2011). The circumstances of this case indicate that

5

the severity of the crime provides some basis for the officers' use of force. Wright and Willey were dispatched to the Anderson home to respond to a domestic violence situation, and upon arrival, they were informed that Anderson was actively abusing his wife and could also hear it occurring from outside on the porch. Though he was not armed, the officers knew based on the information provided to them and what they heard that Anderson was coming from the heat of a domestic violence situation when they encountered him in the hallway. Thus, the severity of the crime weighs in favor of Wright and Willey because it provided the officers with reason to believe that Anderson was a dangerous person.

The next and most important factor to consider is whether the suspect posed an immediate threat to the safety of the officers or others. *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994). When analyzing this factor, the Court must "take the perspective of an officer on the scene without the benefit of 20/20 hindsight and consider that 'police officers are forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Gonzalez v. City of Anaheim*, 747 F.3d 789, 794 (9th Cir. 2014) (quoting *Graham*, 490 U.S. at 396–97).

Plaintiffs argue that there is an issue of material fact concerning whether objective factors supported Wright and Willey's fear of the threat of death or serious bodily injury. ECF No. 38 at 12. However, the officers' statements of fear for their safety were not uncorroborated subjective statements but rather were based on objective factors shown in the body cam videos. From the moment they entered the house to when they encountered him in the hallway, Wright and Willey were confronted with an aggressive suspect. Though Anderson did not have a weapon on him, and the officers knew that, he came from the heat of a domestic violence situation where he was the physical aggressor. He refused to comply with the officers' commands and charged at them in a confined setting while screaming.[4] A slow-motion video may vaguely show the direction Anderson was looking or how high his arms were raised before being shot, however, these are not

---

[4] Plaintiffs argue that Anderson was heading straight into the kitchen, not at the officers, but the two are one and the same. The officers were positioned at the end of the hallway a couple feet from the threshold separating the hallway and kitchen. At a minimum, Anderson saw the light on Willey's gun and knew that the officers were at the other end of the hallway.

6

the type of material facts that would impact a decision of reasonableness when considered in the totality of the circumstances. The "tense, uncertain, and rapidly evolving" circumstances Wright and Willey encountered forced them to make a split-second judgment that cannot be second guessed because of the benefit of 20/20 hindsight. Thus, Wright and Willey reasonably perceived that Anderson posed an immediate threat to them and thus were not required to wait and see if Anderson would physically overtake them and their weapons before using force against him.

Third, the Court must consider whether the suspect was actively resisting arrest or attempting to evade arrest by flight. "The crux of this *Graham* factor is 'compliance with the officers' requests, or refusal to comply.'" *Mbegbu v. City of Phoenix*, No. CV-16-00424-PHX-DGC, 2017 WL 4679260, at *6 (D. AZ. October 18, 2017) (quoting *Mattos*, 661 F.3d at 450). Plaintiffs argue that the officers did not give Anderson time to comply with their orders, however, the body cam videos clearly depict that the officers' commands occurred when he was at the opposite end of the hallway and that the first shot was fired when he charged toward the officers and into kitchen. Anderson ignored the officers' commands to get on the ground and chose to charge toward them instead; a lack of time to comply was not the result of the officers' choices but rather Anderson's choice to advance toward them. Thus, this *Graham* factors weighs in favor of the officers because Anderson resisted police authority by ignoring their commands.

Lastly, the Court must consider whether any other specific factors may be appropriate in this case. The Court finds that two additional factors are relevant to this case.

First, the Court may consider whether a warning was practicable before using deadly force. *Gonzalez*, 747 F.3d at 794. The officers initially demanded that Anderson get down on the ground, however, he charged toward them instead. Given that Anderson covered the distance between his initial location and the officers within two seconds, Wright and Willey had to make a snap judgment on whether to employ force against Anderson. Under these circumstances, the facts weigh in favor of it being impracticable for the officers to warn that deadly force would be used.

Second, the Court may consider whether alternative methods of capturing or subduing the suspect were available to the officers. *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (en banc). Wright and Willey had alternative methods of force available to them such as tasers,

batons, and OC spray. However, the least intrusive method of force does not need to be used so long as the method used was reasonable. *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994). And it does not appear that the officers had time to consider or use their alternative methods of force. The encounter with Anderson charging toward the officers literally occurred in a matter of seconds. For the reasons explained above, the use of deadly force was reasonable given the circumstances of this case.

Considering the severity and extent of the force used, the three *Graham* factors, and other relevant factors to this case, Wright and Willey did not use excessive force. They are entitled to qualified immunity and summary judgment on the excessive force claim. Having found that a constitutional violation did not occur, the Court need not reach the question of whether the law was clearly established. However, even if the Court found that Wright and Willey's conduct constituted a constitutional violation, they are entitled to qualified immunity because, as explained below, the law was not clearly established at the time of the incident.

### b. The law was not clearly established so that a reasonable officer would know that the use of deadly force would constitute excessive force in this situation.

The Court now turns to whether the law was clearly established. The Supreme Court has repeatedly emphasized that the right at issue cannot be defined at a high level of generality. *See, e.g.*, *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam); *City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 613 (2015); *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Rather, the right must be "'clearly established' in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The law on excessive force is settled under *Graham* and *Garner* at a high level of generality. *See Graham*, 490 U.S. at 394–95. In some circumstances, the use of excessive force may be obvious under *Graham*, however, such an occurrence is rare, see *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Brosseau*, 543 U.S. at 199), because "use of excessive force is an area of the law in which the result depends very much on the facts of each case," *Kisela*, 138 S. Ct. at 1153.

This is not a case where an obvious violation of clearly established law occurred. Regarding the use of deadly force, *Graham* and *Garner* stand for the proposition that the use of deadly force must be objectively reasonable based on the totality of the circumstances. *Garner* did emphasize that it is unreasonable to "seize an unarmed, nondangerous suspect by shooting him dead." But that emphasis was in the context of an unarmed, fleeing suspect who did not pose an immediate threat to the officers or to others. In the totality of the circumstances of *Garner*, it was "obvious" that there was a violation. However, Plaintiffs' attempt to show that a violation was obvious in this case fails to account for several key facts that prevent it from classifying as so. Not only does it ignore that the officers' encounter with Anderson occurred during an ongoing domestic violence situation, but it ignores the exigency of the circumstances, including how it occurred within seconds of the officers entering the house and that Anderson was quickly advancing at them in a confined setting. Further, the case law that exists regarding excessive force in domestic violence situations casts serious doubt on this being an obvious violation. The Ninth Circuit has repeatedly recognized the seriousness and dangerousness of responding to domestic violence situations because "more officers are killed or injured on domestic violence calls than on any other type of call." *George v. Morris*, 736 F.3d 829, 839 (9th Cir. 2013). When considering all relevant circumstances from the perspective of a reasonable officer, this was not an obvious violation of *Graham* and *Garner*.

Thus, to be considered clearly established, there must be a body of law that puts a reasonable officer on notice that his conduct would be unreasonable. *al-Kidd*, 563 U.S. at 741. Here, too, Plaintiffs fail to show that the law was clearly established. Plaintiffs cite to numerous cases, but all fall short of clearly establishing the law because of a key distinguishing factor: the domestic violence situation was no longer ongoing when the police got involved. *See, e.g.*, *A.K.H. v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016); *George*, 736 F.3d at 839; *Smith*, 394 F.3d at 702. Though the factual scenario of existing case law does not need to be exactly similar, the Court finds that the ongoing nature of this domestic violence situation distinguishes it from existing case law and prevented the officers from being on clear notice that their conduct was unconstitutional.

Under the existing case law, Plaintiffs' version of the facts, at best, demonstrates a situation that teeters in the hazy border between excessive and acceptable force. In such a case, the Court cannot hold that the law was clearly established. Thus, Wright and Willey are entitled to qualified immunity.

### B. Wright and Willey are entitled to qualified immunity and summary judgment on the denial of medical care claim.

Plaintiffs also allege that Wright and Willey violated the Fourth Amendment by failing to provide and unreasonably delaying medical care to the decedent. Specifically, Plaintiffs argue that the officers did not provide timely medical assistance because they waited six minutes to provide any medical assistance even though the decedent was bleeding profusely after being shot. ECF No. 38 at 24. Wright and Willey argue that they satisfied their constitutional duty by immediately calling for emergency medical care and, despite not having a duty to, attempting lifesaving emergency measures. ECF No. 36 at 14. The Court agrees that the officers satisfied their constitutional duty and grants summary judgment on Plaintiffs' Fourth Amendment denial of medical care claim.

Under the Fourth Amendment, suspects have a right to objectively reasonable medical care. *Est. of Cornejo v. City of L.A.*, 618 Fed. Appx. 917, 920 (9th Cir. 2015). However, "[j]ust as the Fourth Amendment does not require a police officer to use the least intrusive method of arrest . . . neither does it require an officer to provide what hindsight reveals to be the most effective medical care." *Tatum v. City & Cnty. of S.F.*, 441 F.3d 1090, 1098 (9th Cir. 2006). Police officers' constitutional duty to provide objectively reasonable medical care is fulfilled "by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." *Maddox v. City of L.A.*, 792 F.2d 1408, 1415 (9th Cir. 1986).

Here, Defendants clearly satisfied their constitutional duty when they summoned emergency medical care. Willey's body cam video shows that he reported the shots immediately, requested scene security and any available unit, and requested care flight. ECF No. 36-1, Exhibit 3 at 1:05–2:20. In addition, medical care was already in route because Wright had requested an expedited ambulance for Jennifer Anderson roughly one minute and twenty seconds before the

10

shots were fired. ECF No. 36-1, Exhibit 4 at 1:48–3:11. The Court finds, and Plaintiffs do not contest, that Wright and Willey immediately called for emergency medical care. By doing so, Wright and Willey fulfilled their constitutional duty. To the extent Plaintiffs allege that Wright and Willey had a greater duty than to call for emergency medical care, the Court finds their argument unpersuasive. Plaintiffs have not identified, and the Court has not found, any case law that imposes a duty on officers to provide medical care to someone themselves. Rather, Ninth Circuit precedent is clear that when officers promptly request medical assistance, "the Constitution require[s] them to do no more." *Tatum*, 441 F.3d at 1099.

Because the facts alleged, taken in the light most favorable to Plaintiffs, show that the Defendants' conduct did not violate a constitutional right, they are entitled to qualified immunity and summary judgment on the denial of medical care claim.

### C. Wright and Willey are entitled to qualified immunity and summary judgment on the Fourteenth Amendment claim.

Lastly, Plaintiffs claim that Defendants violated the Fourteenth Amendment substantive due process clause through unwarranted state interference in Plaintiffs' familial relationship with the decedent. Specifically, Plaintiffs allege that Wright and Willey's conduct was unreasonable, excessive, and shocks the conscience because they "did not give a verbal warning that deadly force would be used prior to shooting." ECF No. 24 at 10. Wright and Willey argue that they acted constitutionally because actual deliberation was not practical, and they acted with legitimate law enforcement purposes in mind. ECF No. 36 at 14–16. The Court agrees with the officers and finds that they are entitled to qualified immunity and summary judgment on the substantive due process claim because a Fourth Amendment violation did not occur.

The Fourteenth Amendment substantive due process clause makes an officer's conduct that "shocks the conscience" unconstitutional. To determine if an officer's conduct shocks the conscience, the circumstances of the officer's conduct are analyzed to determine if actual deliberation was practical. *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013). When it was, an officer's deliberate indifference may suffice to shock the conscience. *Id.* But if actual deliberation was not practical, such as when an officer must make a snap judgment because

of an escalating situation, his conduct must be analyzed under the subjective purpose to harm standard. *Id.*; *A.D. v. State of Cal. Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013). Under that standard, an officer's conduct is constitutional so long as he had a legitimate law enforcement purpose in mind, such as arrest, self-defense, or the protection of the public. *Cal. Highway Patrol*, 712 F.3d at 454.

Upon review of the record, the Court finds no evidence to support that actual deliberation was practical or that Wright and Willey acted with a purpose unrelated to legitimate law enforcement objectives. When responding to the call, Wright and Willey faced an ongoing domestic violence situation that required them to enter the Anderson home. They encountered Anderson within *seconds* of entering and were forced to make a snap judgment on whether to shoot as he charged toward them. Under these circumstances, actual deliberation was not practical and the purpose to harm standard is appropriate to analyze whether the officers' conduct shocked the conscience. However, no evidence submitted to the Court indicates that Wright and Willey's decision to shoot was predicated on any purpose other than legitimate law enforcement purposes. The evidence, even when viewed in the light most favorable to Plaintiffs, indicates that they fired to protect themselves and/or to respond to the escalating situation.  Without evidence that Wright and Willey had illegitimate purposes in mind, the Court cannot find that their conduct shocks the conscience.

Therefore, the Court finds that Wright and Willey are entitled to qualified immunity because the facts alleged, taken in the light most favorable to Plaintiffs, do not establish a violation of substantive due process. Accordingly, the Court grants summary judgment in favor of Defendants on the substantive due process claim.

### D. Supplemental Jurisdiction

Defendants also request that the Court decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. District courts have supplemental jurisdiction over all claims that are so related to the claims giving rise to original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a). However, a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims under which it has original jurisdiction. *Id.* at § 1367(c)(3).

Above, the Court found that Defendants are entitled to qualified immunity and summary judgment on Plaintiffs' Section 1983 claims. Having dismissed all claims under which the Court had original jurisdiction, the Court declines to exercise supplemental jurisdiction over the state law claims.

## IV.     CONCLUSION

IT IS THEREFORE ORDERED that Defendants' motion for summary judgment is granted.

IT IS FURTHER ORDERED that the clerk of the Court enter judgment accordingly and close the case.

IT IS SO ORDERED.

DATED this 15th day of February 2022.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE